## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JEFFREY HOYDIC,

     Plaintiff,

vs.                            Case No. 4:22-cv-00239-AW-MAF

FLORIDA DEPARTMENT OF
CORRECTIONS, FLORIDA
DEPARTMENT OF TRANSPORTATION,
CENTURION OF FLORIDA, LLC, and
MHM HEALTH PROFESSIONALS, LLC,

     Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendants Centurion of Florida, LLC ("Centurion") and MHM Health Professionals, LLC, ("MHMHP," collectively with Centurion, the "Centurion Defendants"), move to dismiss Plaintiff Jeffrey Hoydic's Complaint (ECF No. 5).

## INTRODUCTION

Mr. Hoydic, an inmate in the custody of the Florida Department of Corrections ("FDOC"), filed this lawsuit against the Centurion Defendants, FDOC, and the Florida Department of Transportation ("FDOT"). Mr. Hoydic is suing the Centurion Defendants for deliberate indifference and medical negligence in connection with

medical treatment provided to Mr. Hoydic following a vehicle accident. In the accident, Mr. Hoydic claims he was hit by an FDOT vehicle that was driven by an FDOC employee while he was working on a road crew under the supervision of FDOC. He claims he suffered injuries as a result.

Mr. Hoydic's complaint against the Centurion Defendants must be dismissed. First, Mr. Hoydic did not—and cannot—state a claim under § 1983 because he did not identify either an underlying constitutional violation or a policy, custom, or practice of the Centurion Defendants that caused his injury. Second, Mr. Hoydic's medical malpractice claims are barred by the applicable statute of limitations. Mr. Hoydic's medical malpractice claims must independently be dismissed both because he failed to comply with conditions precedent to filing suit under Florida's Medical Malpractice Act and failed to state a claim for malpractice. But even if he properly complied with conditions precedent and properly stated a claim, the Centurion Defendants are immune under the doctrine of sovereign immunity. Accordingly, the Court should dismiss this action.

## BACKGROUND FROM COMPLAINT

On or about August 16, 2018, Mr. Hoydic claims he was struck by a vehicle while he was working on a road crew under the supervision of FDOC. (ECF No. 5 at ¶ 9). The vehicle was allegedly an "[F]DOT vehicle" driven by an FDOC

employee. *Id*. Mr. Hoydic claims that he did not receive medical treatment at the job site, but rather was forced to work for the remainder of the day. *Id*. at ¶ 10.

Upon his return to Putnam Correctional Institution, Mr. Hoydic alleges he declared a medical emergency but was not properly treated. *Id*. at ¶ 12. Although Mr. Hoydic is vague about the timeline of events that happened next, he admits he received an MRI four months after the accident. *Id*. at ¶ 12. And at some unspecified time thereafter, it appears that Mr. Hoydic underwent "laser disc surgery." *Id*. Mr. Hoydic claims he requires further surgery and alleges generally that he is not receiving necessary treatment. *Id*.

Nearly four years later, in April 2022, Mr. Hoydic filed this suit, alleging claims of § 1983 deliberate indifference and negligence against the Centurion Defendants. *Id*. ¶¶ 26–37. At no point prior to filing the lawsuit did Mr. Hoydic conduct a pre-suit investigation, obtain medical expert testimony that the Centurion Defendants' employees were negligent, or provide notice to the Centurion Defendants of his intent to bring suit.

## **LEGAL STANDARDS**

### A.   **Motion to Dismiss Standard**

When considering the evidence and ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint allegations must be

construed in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Nonetheless, the plaintiff must still give the defendants "fair notice" of both the claim and "the grounds upon which it rests" to satisfy her pleading requirements. Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Thus, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill*, 941 F.3d at 511 (quoting *Iqbal*, 556 U.S. at 678); *see also Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal"). Rather, the well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B.     Motion to Determine Sufficiency of Pre-suit Investigation Standard**

When a prospective defendant files a motion to determine whether a medical malpractice claim rests on a reasonable basis, "[t]he circuit court must []determine whether the opposing party complied with the reasonable investigation requirements

of sections 766.201 to 766.212." *Holden v. Bober*, 39 So. 3d 396, 400 (Fla. 2d DCA 2010). If the court concludes the notice of intent was not in compliance, "then it shall dismiss the claim." *Id*.

In making this determination, "the standard as to whether a reasonable basis has been shown should be similar to the standard that is applied to determine whether a complaint states a cause of action." *Id*. As such, all factual allegations must be considered true and construed in the light most favorable to the claimant. *Id*.

## ARGUMENT

This Court should dismiss Mr. Hoydic's complaint because he has neither stated a claim for deliberate indifference nor medical malpractice. For deliberate indifference, Mr. Hoydic's claim must be dismissed because he failed to identify a policy, custom, or practice of the Centurion Defendants that caused his injury, and because he failed to allege an underlying constitutional violation. As to the medical malpractice claim, his claim is barred the statute of limitations. Additionally, Mr. Hoydic's malpractice claim must be dismissed because he did not satisfy conditions precedent prior to bringing his claim, he failed to allege a breach of the standard of care, and, lastly, the Centurion Defendants have sovereign immunity.

### I.    Mr. Hoydic's deliberate indifference claims should be dismissed.

Mr. Hoydic fails to state a claim against the Centurion Defendants under § 1983 for deliberate indifference to a serious medical need for two reasons: *first*, he

does not allege that a policy, custom, or practice of the Centurion Defendants caused his injury; and *second,* he does not allege conduct by the Centurion Defendants that constitutes deliberate indifference.

### A.   No injury caused by Centurion policy, custom, or practice.

Private contractors who provide medical care for prisons act under the color of state law for the purposes of § 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). But a medical contractor cannot be liable under theories of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) ("Congress did not intend to create liability under § 1983 unless action pursuant to an official policy or custom caused a constitutional tort."); *see also Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) ("Liability under § 1983 may not be based on the doctrine of *respondeat superior*."); *and see Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) ("Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability.").

Instead, a plaintiff may successfully state a § 1983 claim and show liability of a government entity "only where the [government entity] itself causes the constitutional violation at issue" through implementation of an official policy or custom. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). To establish that an official policy

or custom[1] of the government entity causes the constitutional violation, a plaintiff must show it was the "moving force" behind the alleged constitutional deprivation. *See Monell* 436 U.S. at 693–94. Thus, for Mr. Hoydic to successfully raise a § 1983 claim against correctional medical providers, such as the Centurion Defendants, he must allege that: (1) his constitutional rights were violated; (2) that the corporate entity had a custom or policy that constituted deliberate indifference to that particular constitutional right; and (3) the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

To state a claim, Mr. Hoydic was required to plausibly plead that the Centurion Defendants had an official policy of deliberate indifference or an unofficial custom or practice that was the moving force behind the alleged inadequate treatment he received. But Mr. Hoydic has not done so—in fact, Mr. Hoydic does not even mention a policy, practice, or custom of the Centurion Defendants. At best, Mr. Hoydic alleges "[d]espite their actual or imputed knowledge of the serious risk to Plaintiff's health, Defendants, intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to

---

[1] A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,* 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit defines "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and widespread practice." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). It is also a requirement that, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

medical care requested by Plaintiff." (ECF No. 5 at ¶ 36). Such phrase is devoid of any factual development and is purely conclusory.

And further, Mr. Hoydic's allegations detail only a single incident, which is insufficient to establish a custom. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (establishing a custom requires showing more than "[p]roof of a single incident of unconstitutional activity"). Because Mr. Hoydic has not identified a Centurion Defendant policy, practice, or custom, Mr. Hoydic fails to state a claim under § 1983.

But even if Mr. Hoydic had sufficiently identified a custom or policy, he fails to show—in a non-conclusory manner—that such a custom or policy was the "moving force" behind the purported constitutional violation. *See Morgan v. Tucker*, 3:13-CV-81-J-34PDB, 2016 WL 1089994, at *6 (M.D. Fla. Mar. 21, 2016) (holding plaintiff's boilerplate and conclusory allegations fail to state a § 1983 claim and fail to show that such a custom or policy was the moving force behind the violation). Because Mr. Hoydic fails to plead that the Centurion Defendants had a policy, practice, or custom that caused the alleged constitutional violation, Mr. Hoydic fails to state a claim under § 1983, and the Court should dismiss Count IV.

### B.    Mr. Hoydic does not allege a constitutional violation.

Mr. Hoydic also fails to state a claim under § 1983 because he did not allege facts showing his constitutional rights were violated, much less that they were

violated pursuant to an unidentified policy or custom of the Centurion Defendants. To establish deliberate indifference, Mr. Hoydic must show "(1) that [he] had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The medical treatment provided must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (internal quotations omitted). The Eleventh Circuit has recognized that proof of continuous care undermines a claim that the defendant had a custom or practice of failing to provide care. *See Hines*, 725 F. App'x at 806 (affirming summary judgment on custom and practice claim because, among other things, evidence showed that inmate was provided ongoing medical care); *Moore v. Corizon Medical Servs.*, 2018 WL 2225277, *16 (M.D. Ala. Apr. 25, 2018), *report and recommendation adopted*, 2018 WL 2224058 (M.D. Ala. May 15, 2018) (same).

Here, Mr. Hoydic appears to allege that after he was hit by the vehicle, he received an MRI and underwent "laser disc surgery." (ECF No. 5 at ¶ 12). These actions do not "shock the conscience." *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("It is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation.").

Indeed, Mr. Hoydic's claim centers around his allegation that the Centurion Defendants "intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to medical care requested by Plaintiff." (ECF No. 5 at ¶ 36). But such conclusory allegation is insufficient to establish a deliberate indifference because Mr. Hoydic is not entitled to the medical care of his choosing. *See Harris*, 941 F.2d at 1505 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."); *see also Jones v. Jones*, 2016 WL 11690481, at *2 (N.D. Fla. Jan. 14, 2016) ("To state a viable claim, Plaintiff must demonstrate more than disagreement with the treatment proscribed . . . because he is not entitled to a specific treatment of his choosing.").

Further, Mr. Hoydic's sparse allegations indicate medical treatment was provided. Although, Mr. Hoydic fails to allege what occurred in the months between when he was allegedly injured and when he received an MRI, his allegations demonstrate Mr. Hoydic must have received some medical evaluation and treatment for the determination to be made that he should receive an MRI. The exercise of medical judgment in making that determination cannot support a finding that medical professionals deliberately ignored his medical condition. The same basis applies to Mr. Hoydic's allegation that he in fact received surgical care to address his medical condition.

In any event, an inmate who complains that delay in medical treatment rose to a constitutional violation must show that "the delay does seriously exacerbate the medical problem, and *the delay is medically unjustified*." *Taylor v. Adams*, 221 F.3d 1254, 1259–60 (emphasis added). There are no facts that any delay in treatment was medically unjustified—as stated, Mr. Hoydic must have received some medical evaluation and treatment for the determination to be made that he should receive an MRI. Thus, there are no facts to show that care was unconstitutionally delayed.

Because Mr. Hoydic fails to demonstrate a constitutional violation, the Centurion Defendants cannot be liable under § 1983 since there is no underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[The city and police commission] were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that petitioners could be liable to respondent.); *accord Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."); *Cordrey v. Corizon*, 2016 WL 3408957, at *9 (N.D. Fla. Apr. 22, 2016), *report and recommendation adopted*, 2016 WL 3440604 (N.D. Fla. June 20, 2016) ("The issue of Corizon's liability is necessarily dependent on there being an underlying constitutional violation in the

first instance."). Accordingly, the Court should dismiss Count IV for failure to state a claim.

## II.     Mr. Hoydic's negligence claims should be dismissed.

Mr. Hoydic's negligence claims against the Centurion Defendants are barred for four reasons: *first*, the applicable statute of limitations has run; *second*, Mr. Hoydic failed to comply with the Florida Medical Malpractice Act's pre-suit requirements; *third*, Mr. Hoydic fails to state a claim for medical malpractice; and *fourth*, the Centurion Defendants are immune under the doctrine of sovereign immunity.

### A.     Mr. Hoydic's negligence claims sound in medical malpractice.

As an initial matter, Mr. Hoydic's negligence claim in Count III properly sounds in medical malpractice, and is therefore, subject to strict pre-suit requirements. "Section 766.106(1)(a) defines a claim for medical negligence or medical malpractice as 'a claim, arising out of the rendering of, or the failure to render, medical care or services.'" *Mark E. Pomper, M.D., P.A. v. Ferraro*, 206 So. 3d 728, 731 (Fla. 4th DCA 2016). "In order to determine whether a claim is one grounded in medical malpractice, a court must consider (1) whether the action arose out of medical ... diagnosis, treatment, or care,' and (2) whether such diagnosis, treatment, or care was rendered by a provider of health care." *McManus v. Gamez*, 276 So. 3d 1005, 1007 (Fla. 2d DCA 2019) (internal quotation marks removed for

clarity); *accord Buck v. Columbia Hosp. Corp. of S. Broward*, 147 So. 3d 604, 606 (Fla. 4th DCA 2014) ("When determining whether a complaint alleges a cause of action in medical negligence versus simple negligence, '[t]he key inquiry is whether the action arises out of medical diagnosis, treatment, or care.'"). Thus, "for a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill." *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 311 (Fla. 2018).

When determining whether a claim sounds in negligence or medical malpractice, "a court must look beyond label proffered and 'must[] apply the law to the well-pleaded factual allegations.'" *Univ. of Miami v. Bloomer*, 337 So.3d 838, 840 (Fla. 3d DCA 2022). As such, "[t]he critical question is whether the plaintiff must rely on the medical negligence standard of care as defined by the statute to prevail." *Pomper*, 206 So. 3d at 731.

Here, Mr. Hoydic's claims against the Centurion Defendants center around their alleged failure to provide him with adequate medical treatment. Indeed, the entire gist of Mr. Hoydic's "negligence claims" is that the Centurion Defendants allegedly failed to adequately treat him for a condition about which it should have known had the medical standard of care been satisfied. To prove any of these claims, Mr. Hoydic must show that the Centurion Defendants' medical staff failed to satisfy the standard of care. *S. Miami Hosp., Inc. v. Perez*, 38 So. 3d 809, 812 (Fla. 3d DCA

2010) (concluding claim that hospital "failed to monitor and/or supervise" a decedent sounded in medical malpractice). Further, any allegations that the Centurion Defendants were negligent in training their medical staff to provide appropriate care or in implementing procedures to ensure inmates received adequate care similarly fall within the ambit of a medical malpractice claim. *E.g. Indian River Mem'l Hosp. v. Browne*, 44 So. 3d 237, 239 (Fla. 4th DCA 2010) ("The adequacy of the hospital's procedures depends on the prevailing professional standard for managing and supervising those admitted to emergency rooms. These types of issues arise out of the rendering of, or the failure to render, medical care or services."). As such, the negligence claims against the Centurion Defendants are properly classified as medical malpractice claims.

### B. Mr. Hoydic's medical malpractice claims are barred by the statute of limitations.

Mr. Hoydic's medical malpractices claims are barred because the applicable statute of limitations has expired: Florida medical malpractice claims are subject to a two-year statute of limitations. Fla. Stat. § 95.11(4)(b); *Johnson v. Kats-Kagan*, 2007 WL 221240, at *2 (N.D. Fla. Jan. 25, 2007), *aff'd sub nom. Johnson v. McNeil*, 278 F. App'x 866 (11th Cir. 2008). The events giving rise to Mr. Hoydic's claims occurred in August 2018, so the two-year statute of limitations expired in August 2020. The complaint was not filed until April 2022, nearly two years late. Thus, Mr. Hoydic's medical malpractice claims are barred by the statute of limitations.

**C.   Mr. Hodyic's claim must be dismissed for failure to conduct reasonable investigation.**

Mr. Hoydic failed to conduct a reasonable pre-suit investigation into his medical malpractice claims against the Centurion Defendants, as evidenced by his failure to provide a compliant notice of intent. Such failure requires dismissal of his claims.

When a prospective defendant files a motion to determine whether a medical malpractice claim rests on a reasonable basis, "[t]he circuit court must []determine whether the opposing party complied with the reasonable investigation requirements of sections 766.201 to 766.212." *Holden v. Bober*, 39 So. 3d 396, 400 (Fla. 2d DCA 2010).); *accord Kukral v. Mekras*, 679 So. 2d 278, 280 (Fla. 1996) (holding Chapter 766 sets forth a pre-suit investigation procedure that a claimant "must follow before a medical negligence claim may be brought in court"); *Weaver v. Myers*, 229 So.3d 1118, 1121 (Fla. 2017) ("[B]efore filing a medical negligence action in Florida, a claimant must satisfy statutory requirements, which include conducting a presuit investigation process to ascertain whether there are reasonable grounds to believe that the defendant medical provider was negligent, and that the negligence resulted in injury to the claimant.").

Before bringing a medical malpractice claim, a claimant must provide a notice of intent in the manner prescribed by § 766.106(2)(a), Florida Statutes. *Univ. of Miami v. Wilson*, 948 So. 2d 774, 776 (Fla. Dist. Ct. App. 2006). The notice of intent

must include (1) written corroboration by a medical expert that the prospective

defendant was negligent and that the negligence caused the claimed injury; (2) a list

of all known health care providers seen by the claimant for the injuries complained

of; (3) a list of all known health care providers who evaluated the claimant for the

2-year period prior to the alleged negligence, (4) copies of all medical records relied

upon by claimant's medical expert, and (5) the executed authorization form provided

in § 766.1065, Florida Statutes. *Id.*; § 766.106(2)(a), Fla. Stat. These pre-suit notice

provisions are strictly construed. *Patino v. Einhorn*, 670 So.2d 1179, 1179 (Fla. Dist.

Ct. App. 1996) (holding the pre-suit notice provisions "are limitations on Article I,

Section 21 of the Florida Constitution, and therefore should be strictly construed").

And if the Medical Malpractice Act's requirements are not satisfied, the complaint

should be dismissed. *Holden*, 39 So. 3d at 400; *accord Goldfarb v. Urciuoli,* 858

So.2d 397, 398–99 (Fla. Dist. Ct. App. 2003) (same).

Mr. Hoydic failed to serve the Centurion Defendants with the required notice

of intent before filing suit. Ex. A at ¶¶ 7–8 (Decl. of Deana Johnson). Mr. Hoydic

provided no notice, no written corroboration from a medical expert, no list of his

healthcare providers, no medical records, and no written release. *Id*. Because Mr.

Hoydic failed to comply with mandatory pre-suit requirements, any claim against

the Centurion Defendants for medical negligence or medical malpractice is due to

be dismissed. *See Johnson v. McNeil*, 278 F. App'x 866, 871–72 (11th Cir. 2008)

(affirming dismissal of medical malpractice claim against prison medical staff arising from death of inmate who was killed in attack by another inmate for failure to comply with Florida Medical Malpractice Act's pre-suit requirements).

### D. Mr. Hoydic fails to state a claim for medical malpractice, and should be dismissed for that independent reason.

As addressed *supra*, Mr. Hoydic's negligence claim in Count III is really a medical malpractice claim. Even if it was not due to be dismissed as barred by the statute of limitations and failed to comply with pre-suit notice—which it is—the allegations also fail to state a claim upon which relief may be granted. "The elements of a medical malpractice action are: (1) a duty by the physician, (2) a breach of that duty, and (3) causation." *Saunders v. Dickens*, 151 So. 3d 434, 441 (Fla. 2014). Here, even if Mr. Hoydic were permitted to bring this medical malpractice claim, it should be dismissed for failure to state a claim because he fails to adequately plead facts supporting any element.

In a Florida medical malpractice action, a doctor has a duty "to act within the standard of professional care," which means that the "level of care, skill, and treatment that, in consideration of all surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably prudent health care providers." *Id.* (citing § 766.102, Fla. Stat.). "In short, it is to provide the care that a reasonably prudent physician would provide." *Id.*

When a claim is brought not against the doctor, but against the employing health care provider, as is the case here, "the negligent medical treatment 'is both necessary to the claims against the [hospital] and inextricably connected to them.'" *Palms W. Hosp. Ltd. P'ship v. Burns*, 83 So. 3d 785, 789 (Fla. Dist. Ct. App. 2011) (brackets in original). So, for Mr. Hoydic to sufficiently plead a claim for medical malpractice against the Centurion Defendants, he must first provide facts to plausibly allege the doctor who treated him breached the care that a reasonably prudent physician would provide. *Saunders v. Dickens*, 151 So. 3d at 441. This he has not done.

Nowhere in his Complaint does Mr. Hoydic so much as identify the duty owed to him by the treating physician, much less state facts that would show such a duty was breached. Rather, as argued *supra* regarding deliberate indifference under § 1983, the vague facts alleged in the Complaint show only that that after Mr. Hoydic was hit by the vehicle, he received an MRI and underwent "laser disc surgery." (ECF No. 5 at ¶ 12). Mr. Hoydic has not alleged any facts that would show any medical providers' action fell below the care that would have been provided by a reasonably prudent provider.

Further, yet equally important, Mr. Hoydic completely fails to address the duty owed to him by the Centurion Defendants. All that Mr. Hoydic alleges is that he was in a zone of risk "due to the nature of the relationship between Plaintiff and

Defendants and/or Defendants had a special relationship with Plaintiff." *Id*. at ¶ 28. These allegations are too vague to satisfy Mr. Hoydic's pleading burden, and it requires the Centurion Defendants to guess about how Mr. Hoydic is attempting to hold them liable for the alleged acts or omissions of its employees.

So, because Mr. Hoydic has not even identified the Centurion Defendants' duty that was allegedly breached, in addition to failing to plead facts by which the treating physician could be found to have committed malpractice, he fails to state a claim, and the Court should dismiss count III.

Further, to sufficiently plead a Florida medical malpractice claim, a plaintiff must allege facts demonstrating "the defendant's breach of the standard of care … proximately caused the damages claimed." *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008). To meet this burden, a plaintiff must allege facts to plausibly demonstrate "that what was done or failed to be done probably would have affected the outcome," or "that the injury more likely than not resulted from the defendant's negligence." *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1020 (Fla. 1984). "Under Florida law, a patient's conduct prior to seeking medical attention can be a proximate cause of his or her injury and a defense to medical malpractice." *Turner*, 514 F.3d at 1206.

Here, Mr. Hoydic pleads no facts to plausibly allege any action by the Centurion Defendants proximately caused his injury. In fact, Mr. Hoydic does not

even say what acts or omissions the Centurion Defendants are alleged to have committed, instead referring only to the vague "unlawful acts and omissions" of the Centurion Defendants. *Id*. at ¶ 30. But nowhere in the Complaint does Mr. Hoydic allege any specific act or omission by the Centurion Defendants, and instead only makes vague allegations relating to the acts and omissions of the treating doctor. Mr. Hoydic wholly failed to allege proximate cause against the Centurion Defendants since he never ties any Centurion Defendant act or omission to his injury. As such, Mr. Hoydic has not pleaded causation and the Court should dismiss his medical malpractice claim against the Centurion Defendants.

**E.    The Centurion Defendants are entitled to sovereign immunity.**

Lastly, and regardless of whether the Court agrees that Mr. Hoydic's negligence claims against the Centurion Defendants sound in medical malpractice, the claims must be dismissed because the Centurion Defendants are immune under § 768.28, Florida Statutes. Subsection (10) of the statute provides as follows:

> (10)(a) **Health care providers or vendors**, or any of their employees or agents, **that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(10)(a), Fla. Stat. (emphasis added). As demonstrated by Centurion's contract with FDOC, Centurion both (1) had a contract providing that it is FDOC's agent (Ex. B at 107, § VII(B)(I) ("In the Contractor's performance of its duties and responsibilities under this Contract, the Contractor shall, at all times, act and perform *as an agent of the Department*") (emphasis added)), and (2) was acting within the course and scope of its contract when providing healthcare to Mr. Hoydic. As such, Centurion is an agent of FDOC.[2]

Because the Centurion Defendants are *agents* of FDOC, they fall squarely within the protections of § 768.28(9)(a) for acts in the scope of its contract. Section 768.28(9)(a) provides in pertinent part:

> (9)(a) **No** officer, employee, or **agent of the state or of any of its subdivisions shall be held personally liable in tort** or named as a party defendant in any action **for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such** officer, employee, or **agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.** …

(emphasis added); s*ee Bean v. Univ. of Miami*, 252 So. 3d 810, 816 (Fla. Dist. Ct. App. 2018) (collecting cases applying immunity under § 768.28 to private companies).

---

[2] MHMHP is an affiliate of Centurion. Ex. A at ¶ 1–3 (Decl. of Deana Johnson).

Thus, the Centurion Defendants are entitled to sovereign immunity on the medical malpractice claim because (1) they are agents of FDOC, and (2) there is no allegation as it relates to the medical malpractice claim that the Centurion Defendants or anyone else acted in bad faith.[3] This application of the sovereign immunity statute to the Centurion Defendants is supported by a recent ruling from a sister court in this District. *See King v. Fla. Dep't of Corr. et al.*, Case No. 4:19-cv-488-RH-MJF at ECF Nos. 57, 66 (N.D. Fla. Oct. 13, 2020 and Nov. 5, 2020) (concluding Centurion had sovereign immunity for prisoner's state law claims); *accord Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CV, 2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (dismissing negligence claim under § 768.28(10)(a) against FDC healthcare provider because "Plaintiff has not alleged [the contractor] acted outside the scope and guidelines of its contract with [FDC]."). The analysis is also supported by the Florida courts' interpretation of § 768.28(10)(a):

> The Florida Statutes, the clearest expression of legislative intent, give the Department [of Corrections] broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. *See* § 20.315(12). **They further facilitate, and arguably encourage, these arrangements by** exempting certain health services contracts from competitive-bidding requirements and **extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates**. *See* §§ 945.025(4), **768.28(10)(a)**.

---

[3] Effectively, this means the exclusive remedy for Plaintiff is "against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee." § 768.28(9)(a), Fla. Stat.

*Crews v. Fla. Pub. Employers Council 79, AFSCME*, 113 So. 3d 1063, 1072 (Fla. Dist. Ct. App. 2013) (emphasis added).

## CONCLUSION

The Court should dismiss Mr. Hoydic's Complaint. Mr. Hoydic does not, and cannot, state a § 1983 claim against the Centurion Defendants because he has not identified a policy, custom, or practice that caused his injury and has not pleaded any facts that would demonstrate a constitutional violation. And even if Holland's negligence claim was not barred for failure to comply with Florida's Medical Malpractice Act's pre-suit requirements, it, too, should be dismissed because (1) the statute of limitations has run; (2) Mr. Hoydic failed to state a claim for medical malpractice; and (3) the Centurion Defendants have sovereign immunity.

## WORD COUNT CERTIFICATE

Pursuant to Local Rule 7.1(F), the undersigned hereby certifies that this Motion to Dismiss and Incorporated Memorandum of Law contains 5,476 words.

DATED: July 19, 2022

/s/ Jacob B. Hanson
Brian A. Wahl (Fla. Bar No. 95777)
One Federal Place-1819 5th Avenue, N.
Birmingham, AL  35203
Telephone: (205) 521-8000 | Fax: (205) 521-8800
Primary Email:     bwahl@bradley.com
Secondary Email:  tramsay@bradley.com

R. Craig Mayfield, Esq. (FBN 429643)
Jacob B. Hanson (Fla. Bar No. 91453)

W. Blair Castle (Fla. Bar. 1031504)
100 North Tampa Street, Suite 2200
Tampa, FL  33602
Telephone: (813) 559-5500 | Fax: (813) 229-5946
Primary Email:    cmayfield@bradley.com
Primary Email:    jhanson@bradley.com
Primary Email:    bcastle@bradley.com
Secondary Email: tabennett@bradley.com
                          sdhayes@bradley.com

*Attorneys for Defendant, Centurion of Florida, LLC and MHM Health Professionals, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 19, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of service to all counsel of record.

/s/ *Jacob B. Hanson*
Jacob B. Hanson
*Attorney*

24