UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JEFFREY HOYDIC,**

   Plaintiff,

  vs.                                     Case No. 4:22-cv-00239-AW-MAF

**FLORIDA DEPARTMENT OF
CORRECTIONS, FLORIDA
DEPARTMENT OF TRANSPORTATION,
CENTURION OF FLORIDA, LLC, and
MHM HEALTH PROFESSIONALS, LLC,**

   Defendants.
_____/

## **FIRST AMENDED COMPLAINT**

Plaintiff, JEFFREY HOYDIC, hereby sues Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, FLORIDA DEPARTMENT OF TRANSPORTATION, CENTURION OF FLORIDA, LLC, and MHM HEALTH PROFESSIONALS, LLC, and alleges:

### **NATURE OF THE ACTION**

1. This is an action brought under the common law of the State of Florida, the Constitution and laws of the United States, and 42 U.S.C. §1983. Attorneys' fees are sought under 42 U.S.C. §1988.

2. This Court has jurisdiction over this matter, including pursuant to 28 U.S.C.§ 1331 and because Plaintiff's claims arise out of the Constitution and laws

of the United States; thus, it presents federal questions. The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 due to supplemental jurisdiction over Plaintiff's state law claims.[1]

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, JEFFREY HOYDIC, has been a resident of the State of Florida. He has been incarcerated in the Putnam Correctional Institution (Putnam CI) since at least January 1, 2018.

4. At all times pertinent hereto, Defendant, FLORIDA DEPARTMENT OF CORRECTIONS (DOC), has been organized and existing under the laws of the State of Florida.

5. At all times pertinent hereto, Defendant, FLORIDA DEPARTMENT OF TRANSPORTATION (DOT), has been organized and existing under the laws of the State of Florida.

6. At all times pertinent hereto, Defendant CENTURION OF FLORIDA, LLC (Centurion) was conducting business in Florida and provided healthcare for prisoners housed within one or more DOC institutions, including Putnam CI.

7. Defendant Centurion was responsible for providing healthcare services to Plaintiff and all of the inmates at Putnam CI from at least January 1, 2018, to the present.

---

[1] See also ECF 1 (Notice of Removal).

8. At all times pertinent hereto, Defendant MHM HEALTH PROFESSIONALS, LLC (MHM), was conducting business in Florida and provided healthcare for prisoners housed within one or more DOC institutions, including Putnam CI.

9. Like Defendant Centurion, Defendant MHM was also responsible for providing healthcare services to Plaintiff and all of the inmates at Putnam CI from at least January 1, 2018, to the present.

## LEGAL REQUIREMENTS

10. Plaintiff has satisfied all conditions precedent to bringing this action and, to the extent there are any, exhausted any necessary administrative remedies prior to filing this action. This action is timely filed thereafter.

11. In the alternative, any further effort by Plaintiff to satisfy any conditions precedent and/or exhaust his administrative remedies would be futile.

12. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Plaintiff requests Defendants be made to pay said fees under the laws referenced herein.

## STATEMENT OF ULTIMATE FACTS

### The Accident

13. On or about August 16, 2018, Plaintiff was working on a road crew around St. Augustine, Florida under the supervision of DOC. Plaintiff was partially

inside a truck retrieving tools while standing on the shoulder of the road when a DOT vehicle negligently driven by a DOC employee, Officer Parker, crashed into the truck and also into Plaintiff (the "accident").

14. At that time and place, Defendants DOT and DOC negligently operated, maintained and/or owned the motor vehicle so that it crashed and caused Plaintiff severe injuries. Moreover, Officer Parker had full authorization to operate said vehicle.

## Unreasonable Delay in Properly Treating Plaintiff

### Plaintiff's Serious Need

15. Because of the accident, Plaintiff was seriously injured and in significant pain; however, he was not treated on-site, rather he was required to work for the remainder of the day.

16. The same day he was injured, Plaintiff declared a medical emergency upon returning from his job duty. He was in obvious pain and limping. Additionally, his suffering was so great that even non-doctors would easily recognize his need for medical attention.

17. After the accident, Plaintiff's declaration of a medical emergency, and/or other complaints he has made while incarcerated, all Defendants to this action either knew or should have known that Plaintiff was in a serious vehicular accident with a serious need of medical attention.

Deliberate Indifference

18. Despite actual knowledge and/or constructive knowledge of his condition, it took until March 8, 2019 (almost seven months after the accident) for Defendants Centurion and MHM to give Plaintiff an MRI. Moreover, Plaintiff never received appropriate pain management for his intense suffering (which still continues today).

19. If Plaintiff were not incarcerated, he would have been treated for his medical conditions immediately. Moreover, because of the nature of his injuries, an MRI was necessary because, as opposed to a CT scan, the spatial resolution of spinal anatomy can be more clearly defined.

20. Because Plaintiff was incarcerated, he was not properly treated, evaluated, or given an MRI until about seven months later, and did not receive surgery until on or about March 27, 2019. Moreover, it would have been obvious to any person observing Plaintiff that cheap CT scans performed on him were either providing erroneous results, via faulty equipment, or of a lesser quality than needed. Also, the obvious nature of these circumstances would be clear to both doctors and non-doctors alike.

21. During the approximate seven months he waited for an MRI, Plaintiff was limping, in obvious pain without appropriate pain management, and otherwise unable to perform work. He still requires further surgery and treatment which he is

not receiving. Thus, his treatment is so grossly inadequate as to shock the conscience and/or is intolerable to fundamental fairness.

22. With no reason to delay Plaintiff's treatment other than the high costs of an MRI and surgery, Defendants unreasonably delayed the procedures that Plaintiff should have received much earlier attempting instead to give him lesser quality cheap CT scans despite the obvious need for an MRI. The treatment, or lack thereof, of Plaintiff amounts to objectively unreasonable health care because anyone could see Plaintiff's suffering.

## Harm to Plaintiff

23. Unreasonably delaying Plaintiff's treatment caused him a risk of permanent physical injury from the delayed MRI and subsequent delayed surgeries.

24. Unreasonably delaying Plaintiff's treatment also caused Plaintiff needless pain and suffering that he would not have had to suffer as a free person or at a facility providing proper medical attention.

25. Unreasonably delaying Plaintiff's treatment also aggravated Plaintiff's injuries, seriously exacerbated the medical problem, and was medically unjustified.

## **Failure to Train**

26. Florida Statute Section 316.065 requires every driver of a vehicle involved in a crash resulting in injury or property in an apparent amount of at least $500 to report the incident to the local police department or Florida Highway Patrol.

27. Upon information and belief, Defendants DOT and DOC failed to train their drivers to comply with Florida Statute Section 316.065, as partially evidenced by the multiple injuries and property damage involved in Plaintiff's accident with an apparent value of over $500.

28. Thus, upon information and belief, Defendants DOT and DOC had a policy, custom or practice of compelling persons in custody (such as Plaintiff) to work in and around their trucks without properly training the drivers of said vehicles on the legal requirements of Florida Statute Section 316.065.

29. Plaintiff suffered damages due to the failure to train their drivers on the requirements of Florida Statute Section 316.065. For example, if such a report was made, the investigating officers would have discovered Plaintiff's injuries in light of the obvious facts at the accident scene and offered him immediate and proper medical care in lieu thereof.

30. The delay in medical care caused Plaintiff damages via aggravation and worsening of his injuries and was a moving force behind the inadequate treatment he received.

31. Moreover, the covering up of the accident is both a violation of Florida Statute Section 316.065 and is deliberately indifferent to the fact that someone (i.e., Plaintiff) was injured in a vehicular accident in violation of his constitutional rights.

32. Additionally, as Plaintiff declared a medical emergency due to the accident, all Defendants either knew or should have known of the Florida Statute Section 316.065 violation. All Defendants were responsible for the safety of Plaintiff and/or to properly investigate the circumstances of criminal and/or tortious activity involving incarcerated persons such as Plaintiff and thus had a duty to report either what was known to be, or should have been known to be, the violation of Florida Statute Section 316.065.

### The Discipline Policy, Custom or Practice

33. The day after Plaintiff's injury, he again informed Defendants he was injured and showed visible signs of being unable to walk properly.

34. Instead of providing Plaintiff with access to a nurse, doctor, or otherwise training their employees to recognize truly injured inmates, Defendants DOT and DOC exercised a custom and/or practice of using their disciplinary process to threaten Plaintiff into going back to work – telling him he was going to work or be disciplined.

35. Plaintiff suffered damages due to Defendants DOT and DOC's policy, custom or practice of forcing inmates to work while injured because it both delayed the medical treatments Plaintiff was to receive, caused him additional pain, and/or aggravated his injuries.

36. Moreover, forcing an injured worker to go back to labor under the threat of discipline (which includes but is not limited to solitary confinement) is deliberately indifferent to the rights of persons such as Plaintiff, in violation of his constitutional rights.

37. Additionally, as Plaintiff declared a medical emergency due to the accident, all Defendants either knew or should have known of this custom and/or practice. However, Defendants Centurion and MHM had a custom and practice of ignoring Plaintiff and persons like him and refused to properly designate them as medically unable to work; thereby participating and enabling Defendants DOT and DOC's custom or practice of forcing inmates to work while injured.

## COUNT I
## COMMON LAW NEGLIGENCE
### Against Defendant DEPARTMENT OF TRANSPORTATION

38. Paragraphs 1-3, 5, 10-17, 23-37 are re-alleged and incorporated herein by reference.

39. This count sets forth a claim against Defendant DOT for common law negligence. Defendant DOT knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

40. Specifically, Defendant DOT owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant and/or Defendant had a special relationship with Plaintiff and, consequently, a duty of care was attendant

thereto. Alternatively, legal duties devolved upon Defendant DOT because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

41. Defendant DOT owed Plaintiff a duty not to cause the accident (for which both the driver and owner of the vehicle are equally responsible), ignore or tolerate the unreasonable delay in treating Plaintiff, train and enable the drivers of its vehicles to comply with mandatory reporting laws, and not to use its disciplinary powers against injured inmates to compel them to work.

42. Defendant DOT breached its duties as mentioned in the prior paragraph as described above, including but not limited to being liable for the accident.

43. The actions of Defendant DOT complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

44. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, bodily injury, emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendant DOT and is therefore entitled to compensatory damages. These damages have occurred in the past, are occurring at present and will certainly occur in the future.

## COUNT II
## COMMON LAW NEGLIGENCE
### Against Defendant DEPARTMENT OF CORRECTIONS

45. Paragraphs 1-4, 10-37 are re-alleged and incorporated herein by reference.

46. This count sets forth a claim against Defendant DOC for common law negligence. Defendant knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

47. Specifically, Defendant DOC owed Plaintiff a duty not to cause the accident (for which both the driver and owner of the vehicle are equally responsible), ignore or tolerate the unreasonable delay in treating Plaintiff, train and enable the drivers of its vehicles to comply with mandatory reporting laws, and not to use its disciplinary powers against injured inmates to compel them to work.

48. Defendant DOC breached its duties as mentioned in the prior paragraph as described above, including but not limited to causing the accident.

49. The actions of Defendant DOC complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

50. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, bodily

injury, emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendant DOC and is therefore entitled to compensatory damages. These damages have occurred in the past, are occurring at present and will certainly occur in the future.

## COUNT III
## COMMON LAW NEGLIGENCE
### Against Defendants CENTURION/MHM

51. Paragraphs 1-3, 6-25, 33-37 are re-alleged and incorporated herein by reference.

52. This count sets forth a claim against Defendants Centurion/MHM for common law negligence. Defendants knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

53. Defendants Centurion/MHM owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendants and/or Defendants had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendants because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

54. Specifically, Defendants Centurion/MHM owed Plaintiff a duty not to cause, ignore or tolerate the unreasonable delay in treating Plaintiff, ignore the fact that Plaintiff was a legal victim of the refusal to comply with the mandatory reporting

laws, and not permit the use of disciplinary powers against injured inmates to compel them to work by properly designating those persons as too injured to work.

55. Defendants Centurion/MHM breached its duties as mentioned in the prior paragraph as described above.

56. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, bodily injury, emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendants Centruion and MHM and is therefore entitled to compensatory damages. These damages have occurred in the past, are occurring at present and will certainly occur in the future.

## COUNT IV
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### Against Defendants CENTURION/MHM

57. Paragraphs 1-3, 6-25, 33-37 are re-alleged and incorporated herein by reference.

58. At all times material, Defendants Centurion and MHM had a duty under the Constitution of the United States of America to provide adequate medical care to those inmates, including Plaintiff, in the custody of Defendant DOC at Putnam CI.

59. At all times material, Defendants Centurion and MHM had a duty under the Eighth Amendment, as applicable to the State through the Fourteenth

Amendment to the United States Constitution, not to be deliberately indifferent to the known serious medical needs of inmates in the custody of DOC, like Plaintiff.

60. While incarcerated within a DOC facility with healthcare/medical services provided under contract with DOC by Centurion and MHM, Plaintiff suffered from a serious medical need to wit, a crushed and ruptured disc which, if not properly and timely treated would and did leave Plaintiff permeant damage including but not limited to disc removal.

61. Defendants Centurion and MHM were deliberately indifferent to Plaintiff's medical needs. Defendants were aware of Plaintiff's injuries, as evidenced by Plaintiff being struck by a truck and suffering. Defendants, through their employees, officers, or agents, were aware of Plaintiff's injuries and that Plaintiff was at risk of serious harm and continued pain if he did not receive immediate and proper treatment.

62. Plaintiff's medical diagnosis and condition or conditions were known or knowable to Defendants at all times material. Despite their actual or imputed knowledge of the serious risk to Plaintiff's health, Defendants, intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to medical care requested by Plaintiff. Had Defendants, through their officers, employees, or agents, ensured that Plaintiff was properly treated in a timely manner, Plaintiff's pain and injuries would have been alleviated or limited.

63. Defendants Centurion/MHM breached its duties as mentioned in the prior paragraph as described above.

64. As a direct, proximate, and foreseeable result of Defendants Centruion and MHM's deliberate indifference to Plaintiff's known serious medical needs, Plaintiff has suffered the injuries described herein including bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, expenses of medical and nursing care and treatment, and other losses. These injuries and losses are continuing, and Plaintiff will suffer such losses in the future.  Plaintiff is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against all Defendants for the following:

 (a) that process issue and this Court take jurisdiction over this case;

 (b) that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

 (c) enter judgment against Defendants and for Plaintiff awarding all legally-available general and compensatory damages and

economic loss to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d) enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e) enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate;

(g) enter judgment for damages against Defendants; and

(h) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/  Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on counsel of record by CM/ECF this 15th day of August 2022.

/s/  Marie A. Mattox
Marie A. Mattox